JOURNAL ENTRY and OPINION
{¶ 1} Appellant Mercedes-Benz USA, LLC ("Mercedes") appeals from the jury's award of damages in the amount of $27,500 in favor of appellee Monica Mason, and the court's award of treble damages. Mercedes assigns six errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 MANY CAR REPAIRS IN A SHORT PERIOD OF TIME {¶ 3} On May 24, 2001, Monica Mason leased a 2001 Mercedes-Benz C320 from Motorcars Infiniti/Mercedes Benz located in Bedford, Ohio. The lease was through Mercedes Benz Credit Corporation and was for a term of 39 months with a monthly payment of $768.41. In connection with the lease, Mercedes issued a four-year/50,000 mile warranty on the vehicle. Mason also purchased an additional warranty for $1,080, which extended the warranty coverage to 100,000 miles.
 {¶ 4} Mason leased the C320 because Mercedes represented it as one of the "safest, most reliable, maintenance free cars."[2] She needed a reliable car because she traveled frequently.
 {¶ 5} The day after taking possession of the car, Mason was driving on the freeway with a coworker, when the steering on the car became difficult. The coworker testified that it was obvious Mason was having difficulty steering because Mason had to use two hands in order to turn the wheel to exit the freeway. The car was towed to the dealership. The mechanic found no obvious problem with the power steering, but as a precaution he replaced the power steering pump. Mason's expert, Mark Sargent, testified that a dealership would not replace an $800 part without a reason.
 {¶ 6} Over the next two years, Mason took the car in for repairs over twenty times for the following problems: driver's side seat belt release was stuck, gear shift light was not working, rear window would not express up, faulty thermostat, windshield wiper sensors inoperable, head light sensors failed, turn signal bulbs repeatedly burning out, climate control on the passenger side failed, remote key access intermittently not working, loud squeaking noises, key would not release from the ignition, brake lights not working, and lateral acceleration sensors malfunctioned. Most of the problems were corrected; however, some repairs required several visits before being resolved.
 {¶ 7} Finally, the driver's seat motor failed, which prevented Mason from being able to adjust the seat, and her Global Position System ("GPS") also failed. According to Mason, Mercedes refused to repair the driver's seat or GPS without her paying for it; therefore, she did not have these problems repaired. Mercedes denied it refused to repair the vehicle at no cost. At this point, Mason had driven the car approximately 60,000 miles; however, her extended 100,000 mile warranty was still valid.
 {¶ 8} Mercedes offered to lease another vehicle to Mason. However, the vehicle offered to her did not have the upgrades she had paid for, and Mercedes required that she pay at least $3,600 to break her lease. Mason refused the offer.
 {¶ 9} Mason eventually stopped driving the Mercedes because she lost confidence in the car and no longer felt safe. Although Mason was still paying for the lease on the Mercedes, she purchased a 1992 Buick Century from her grandmother that she used for her driving needs.
 {¶ 10} Mason's expert, Mark Sargent of Motor Vehicle Forensic Services, stated that he had never heard of a car needing so many repairs in so short a time. He claimed the number of repairs was not typical, especially for a Mercedes. In his opinion, the car was not fit for its ordinary purpose because it was not reliable. He conceded that malfunctioning head lights, windshield wipers, and turn signals seem minor, but stressed that they become safety issues when not working properly.
 {¶ 11} The jury awarded Mason $20,000 for breach of implied warranty of merchantability and $7,500 for her Consumer Sales Practices Act claim. After conducting a hearing, the trial court awarded Mason treble damages on her Consumer Sales Practices Act claim, but denied her motion for attorney fees. Mercedes now appeals and Mason cross-appeals.
 INTERROGATORIES {¶ 12} In its first assigned error, Mercedes claims the trial court erred by refusing to submit requested interrogatories to the jury.
 {¶ 13} Civ. R. 49(B) states:
"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."
 {¶ 14} Civ.R. 49(B) does not require the trial judge to act as a "`mere conduit who must submit all interrogatories counsel may propose.'"[3] The court retains limited discretion to reject proposed interrogatories where they are ambiguous, confusing, redundant, or otherwise legally objectionable.[4]
 {¶ 15} In the instant case, the trial court's reason for not submitting the interrogatories was because it had "never done it."[5] Thus, the trial court did not reject the interrogatories because they were improper. Rather, the trial court refused because it had "never done it before." This clearly is an erroneous basis for refusing to submit interrogatories. The trial court may refuse to submit interrogatories only if they are "ambiguous, confusing, redundant, or legally objectionable."[6]
 {¶ 16} Nevertheless, we conclude the trial court's refusal to submit the interrogatories was not prejudicial. The Ohio Supreme Court in Freeman v. Norfolk Western Ry. Co.[7] held:
"The purpose of an interrogatory is to `test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict.' Riley v. Cincinnati (1976),46 Ohio St.2d 287, 298, 75 O.O.2d 331, 338, 348 N.E.2d 135, 142. Although interrogatories may be addressed to issues of mixed law and fact or issues of fact only, the issues must be ultimate and determinative in character. Ragone, supra,42 Ohio St.2d at 169, 71 O.O.2d at 168, 327 N.E.2d at 651. This court has defined proper interrogatories as those that will lead to `findings of such a character as will test the correctness of the general verdict returned and enable the court to determine as a matter of law whether such verdict shall stand.' Bradley v. MansfieldRapid Transit, Inc. (1950), 154 Ohio St. 154, 160, 42 O.O. 221, 224, 93 N.E.2d 672, 676-677. A properly drafted interrogatory will elicit a statement of facts from which a conclusion of negligence or no negligence may be drawn. Id. at 161, 42 O.O. at 224, 93 N.E.2d at 677. An interrogatory that is merely probative or evidentiary in nature, and does not touch on an ultimate issue, is improper. Id."[8]
 {¶ 17} In the instant case, Mercedes proposed sixteen interrogatories. Interrogatories six through twelve dealt with the implied warranty of a particular purpose, which Mason voluntarily dismissed, and, therefore, were properly not submitted.
 {¶ 18} Interrogatories one and two asked the jury to identify how Mason's vehicle was not fit for its ordinary purpose and whether the defects were reported to the dealer. Those interrogatories were improper because Mason alleged only one claim of implied breach of warranty based on the totality of circumstances that the vehicle was not fit for its ordinary purpose. Mason claimed it was the multitude of problems with the vehicle that made it unfit for its ordinary purpose. Therefore, because there was only one claim for breach of implied warranty of merchantability, we conclude the submission of interrogatories one and two was not necessary because they were not determinative of an ultimate issue. Rather, the interrogatories were merely probative.
 {¶ 19} Interrogatories three, four, five and sixteen concerned damages. However, the measure of damages was contrary to the trial court's instructions on damages, and, therefore, properly rejected.
 {¶ 20} Interrogatories thirteen, fourteen, and fifteen were properly rejected because Mercedes requested the jury to write a narrative regarding what they found to be unfair, deceptive, or unconscionable. Civ.R. 49(B) does not require submission of an interrogatory which is "`merely of a probative or evidentiary nature.'"[9] Where the determinative issues and the issues submitted to the jury for its verdict are identical, there is no function for an interrogatory.[10] The jury could not have found in favor of Mason on her Consumer Sales Practices Act claim without finding Mercedes committed an unfair, unconscionable, or deceptive act. The two interrogatories would have required the jury to state the specific evidentiary basis for its finding Mercedes violated the Ohio Consumer Sales Practices Act. Thus, the two proposed interrogatories did not address determinative issues.[11]
 {¶ 21} Mercedes argues this case is analogous to this court's opinion in Rich v. McDonald,[12] requiring us to reverse the matter for a new trial. However, we conclude Rich is distinguishable from the instant case.
 {¶ 22} Although the trial court in Rich had arbitrarily refused to issue the interrogatories, in that case prejudice arose because the trial court had erred in instructing the jury on a crucial issue in the case. The requested interrogatories would have indicated if the erroneous instruction influenced the jury. Moreover, our review of the interrogatories in Rich
indicated that they were not legally objectionable.
 {¶ 23} In the instant case, the trial court correctly instructed the jury and we have determined that the interrogatories were legally objectionable. Under the circumstances, we cannot say that the trial court's refusal to submit the proposed interrogatories resulted in prejudicial error, unlike in the Rich case. Accordingly, we overrule Merecedes' first assigned error.
 TREBLE DAMAGES {¶ 24} In its second assigned error, Mercedes claims the trial court erred by awarding treble damages because there was no evidence that Merecedes committed a deceptive or unconscionable act. Mercedes further contends that because its interrogatories were not submitted to the jury, the trial court would have to speculate what constituted the basis of the jury's finding the Ohio Consumer Sales Practices Act was violated.
 {¶ 25} R.C. 1345.09(B) provides for the following damages:
"(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) or section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may * * * recover, * * * three times the amount of his actual damages or two hundred dollars, whichever is greater * * *."
 {¶ 26} Mercedes claims that without an interrogatory, the trial court could not determine whether the conduct giving rise to the violation of the Ohio Consumer Sales Practices Act was deceptive, or unconscionable. We disagree.
 {¶ 27} Whether treble damages should be awarded is a legal issue for the trial court.[13] The evidence indicated the reason Mason purchased a Mercedes was because Mercedes represented its vehicles as being the most reliable, safest cars on the market. The car purchased by Mason, however, was neither safe nor reliable, as it was beset with a multitude of problems, some of which affected the safety of the vehicle.
 {¶ 28} In fact, the jury found that Mercedes breached its implied warranty of merchantability; therefore, the trial court did not have to speculate whether the jury found Mercedes to have committed a deceptive act. Pursuant to R.C. 1345.02(B)(1) (10), the failure to honor an implied warranty of merchantability is a deceptive act. R.C. 1345.02(B)(1) provides:
"(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
"(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;"
"* * *
"(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."
 {¶ 29} Therefore, because the breach of an implied warranty of merchantability has previously been declared a deceptive act, treble damages were appropriately awarded in the instant case. Accordingly, Mercedes' second assigned error is overruled.
 IMPLIED WARRANTY OF MERCHANTABILITY {¶ 30} In its third assigned error, Mercedes claims the evidence was
 {¶ 31} insufficient to support the jury's finding that Mercedes violated an implied warranty of merchantability. Mercedes argues that because Mason drove the car approximately 60,000 miles there was no evidence that Mason's car was unfit for its ordinary purpose.
 {¶ 32} R.C. 1302.27(A) implies a warranty that goods sold shall be merchantable. In order for goods to be merchantable, they must be, "fit for the ordinary purposes for which such goods are used[.]"[14]
 {¶ 33} Although Mercedes cites to various cases for the proposition that continued use of the car undermines the claim of breach of implied warranty of merchantability, those cases are distinguish-able.[15] They dealt with a singular or several repairs, but not the multitude of different problems that afflicted Mason's vehicle, which required her to have the car in for repairs twenty times over a two-year time period.
 {¶ 34} Mason testified that her faith in the vehicle was so undermined by its constant problems that, although she was still paying for the Mercedes' lease, she had to purchase another vehicle. The value to the buyer of an automobile is substantially impaired when its nonconformities undermine the buyer's faith in the integrity and reliability of the vehicle.[16]
Therefore, given the fact she no longer drove the Mercedes even though she still owed on the lease, supports her allegation that the car was unfit for its ordinary purpose. She no longer felt safe driving the car. Accordingly, Mercedes' third assigned error is overruled.
 OHIO CONSUMER SALES PRACTICES ACT {¶ 35} In its fourth assigned error, Mercedes claims the jury's finding that Mercedes violated the Consumer Sales Practices Act was not supported by sufficient evidence because there was no evidence that Mercedes committed an unfair, deceptive, or unconscionable act. Mercedes also argues there was no evidence that Mason suffered any damages as a result of any alleged violation because all the repairs were made at no cost to her.
 {¶ 36} As we stated in addressing Mercedes' second and third assigned errors, the evidence supported the jury's finding that Mercedes breached its implied warranty of merchantability. This also supports the jury's finding that Mercedes violated the Ohio Consumer Sales Practices Act. We will address the damages portion of this assigned error in the fifth assigned error. Accordingly, Mercedes' fourth assigned error is overruled.
 EXCESSIVE DAMAGE AWARD {¶ 37} In its fifth assigned error, Mercedes claims the damage award was grossly excessive because it exceeded Mason's actual damages.
 {¶ 38} In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive.[17] In the instant case, the record is devoid of any evidence that the jury was wrongfully influenced in returning a large award, and the amount of the award itself is not so manifestly excessive to warrant our interference with the province of the jury. The jury awarded Mason $20,000 for her breach of implied warranty claim and $7,500 for her consumer sales practices claim. We cannot say this amount was excessive because it was less than the $29,967.99 for which Mason was obligated under her lease.
 {¶ 39} In addition, the trial court was in the best position to determine whether the award was manifestly excessive or influenced by passion and prejudice.[18] The trial judge refused to set the verdict aside and denied the motion for a new trial. That determination is entitled to deference.[19]
 {¶ 40} Also, as we have stated above, the trial court did not err by awarding treble damages. Mercedes breached its implied warranty of merchantability, which constitutes a deceptive act under the Ohio Consumer Sales Practices Act. Accordingly, Mercedes' fifth assigned error is overruled.
 REMITTITUR {¶ 41} In its sixth assigned error, Mercedes claims the court erred
 {¶ 42} by denying its motion for remittitur due to the excessive damage award. Because we found in the fifth assigned error that the damage award was not excessive, the trial court did not err by denying Mercedes' motion for remittitur. Accordingly, Mercedes' sixth assigned error is overruled.[20]
Judgment is affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Rocco, J., concur.
 APPENDIX ASSIGNMENTS OF ERROR
 "I. The trial court erred to the prejudice of MBUSA inrefusing to submit proper written interrogatories to the jury totest the jury's general verdict."
 "II. The court erred in awarding treble damages on appellee'sConsumer Sales Practices Act claim because the jury did not findthat MBUSA committed an act or practice declared by rule orjudicial decision to be a violation of the Consumer SalesPractices Act."
 "III. The jury's verdict was not supported by the evidence andwas contrary to law, as appellee failed to demonstrate that thevehicle was not fit for its ordinary purpose of personaltransportation."
 "IV. The jury's verdict was not supported by the evidence andwas contrary to law, as appellee failed to demonstrate that MBUSAacted unfairly, deceptively, or unconscionably in dealing withappellee's complaints."
 "V. The combined jury award was excessive as a matter of lawin light of appellee's substantial use of the vehicle, appellee'slimited interest in the vehicle, and MBUSA's responsiveness inattempting to resolve appellee's concerns with the vehicle."
 "VI. The trial court erred in denying MBUSA's motion forremittitur, because the jury's damages award was excessive anddid not reflect the actual damages shown by the evidence."
[1] See Appendix.
[2] Tr. at 136.
[3] Ramage v. Cent. Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 107, quoting Ragone v. Vitali Beltrami, Jr.,Inc. (1975), 42 Ohio St.2d 161, 165.
[4] Id.
[5] Tr. at 530.
[6] UZ Engineered Prods. Co. v. Midwest Motor Supply Co.,147 Ohio App.3d 382, 399, 2001 Ohio 8779, citing Ziegler v. WendelPoultry Serv., Inc. (1993), 67 Ohio St.3d 10, 15.
[7] (1994), 69 Ohio St.3d 611.
[8] Id. at 613-614.
[9] Ragone, supra, 42 Ohio St.2d at 169.
[10] Richley v. Liechty (1975), 44 Ohio App.2d 359, 363.
[11] Costa v. Hardee's Food Sys. (Jan. 20, 1998), 12th
Dist. No. A97-03-022.
[12] 155 Ohio App.3d 1.
[13] Bierlein v. Alex's Continental Inn, Inc., (1984),16 Ohio App.3d 294, 301.
[14] R.C. 1302.27(B)(3).
[15] Labonte v. Ford Motor Co. (Oct. 7, 1999), Cuyahoga App. No. 74855 (plaintiff's vehicle returned eight times for a "check engine" warning light malfunction); Filipovic v. FairchildChevrolet (Sept. 27, 2001), Cuyahoga App. No. 78673 (used car returned three times for repairs); Miller v. Daimler ChryslerMotors Corp. (May 31, 2001), Cuyahoga App. No. 78300 (only problem was noise and vibration); Reyant v. Daimler-Benz (Dec. 29, 1978), 9th Dist. No. 8972 (vehicle returned once for repair of broken crankshaft); Sharkus v. Daimler Chrysler Corp. (Oct. 17, 2002), Cuyahoga App. No. 79218 (vehicle repaired on six occasions, with noise and vibration an unrepairable problem).
[16] McCullough v. Bill Swad Chrysler-Plymouth (1983),5 Ohio St.3d 181, paragraph four of the syllabus.
[17] See Moskovitz v. Mt. Sinai Medical Ctr.,69 Ohio St.3d 638, 1994 Ohio 324; Toledo, Columbus Ohio River RR. Co. v.Miller (1923), 108 Ohio St. 388, 402-403.
[18] See, generally, Villella v. Waikem Motors, Inc. (1989),45 Ohio St.3d 36, 40; Larrissey v. Norwalk Truck Lines, Inc.
(1951), 155 Ohio St. 207, 219; Moskovitz, supra.
[19] Moskovitz, supra.
[20] Mason untimely filed a cross-appeal raising three assigned errors. This court issued a ruling stating we would only consider those errors pursuant to R.C. 2505.22 if we reverse the judgment. Therefore, because we are affirming, we will not address the errors raised by Mason.