[Cite as *Dillon v. Farmers Ins. of Columbus, Inc.*, 2014-Ohio-431.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| JERRY DILLON AND NANCY DILLON | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiffs-Appellees | : |  |
|  | : |  |
| -vs- | : | Case No. 2013CA0014 |
|  | : |  |
| FARMERS INSURANCE OF | : |  |
| COLUMBUS, INC. | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:    Civil appeal from the Coshocton County
Municipal Court, Case No. CVE-1100847

JUDGMENT:    Affirmed in Part and Reversed in Part

DATE OF JUDGMENT ENTRY:    February 6, 2014

APPEARANCES:

For Plaintiffs-Appellees    For Defendant-Appellant

JAMES SKELTON    THOMAS GLASSMAN
611 Court Street    SMITH, ROLFES & SKAVDAHL CO., LPA
Coshocton, OH 43812    600 Vine Street, Suite 2600
Cincinnati, OH 45202

*Gwin, P.J.*

{¶1} Appellant appeals the following judgment entries of the Coshocton Municipal Court: the March 22, 2012 judgment entry denying appellant's motion for judgment on the pleadings and motion for summary judgment, the April 27, 2012 judgment entry granting appellees' partial motion for summary judgment, the June 25, 2012 judgment entry awarding appellees damages including treble damages and attorney fees, and the nunc pro tunc judgment entry of July 17, 2012 correcting the total amount of damages to include the amount of actual damages stipulated to by the parties.

*Facts & Procedural History*

{¶2} In October of 2011, a deer struck the 2009 Mercury Milan of appellees Jerry and Nancy Dillon. The vehicle was damaged and could not be driven. At the time of the accident, appellees were covered by an insurance policy of appellant Farmers Insurance of Columbus, Inc. Appellees contacted Mission Auto Connection, Inc. ("Mission Auto") to tow the vehicle and provide appellees with a rental car. Appellant subsequently paid the towing charge and rental car expenses of appellees pursuant to the insurance policy.

{¶3} Mark Babb ("Babb") was the claims adjuster assigned to appellees' case. Babb contacted Jerry Dillon prior to inspecting the vehicle. At that time, Jerry Dillon did not inform Babb that he wanted original equipment manufacturer ("OEM") parts used to repair his vehicle. After Babb inspected appellees' 2009 Mercury Milan, he created a proposed repair estimate for the vehicle which included OEM and non-OEM parts. Babb presented Mission Auto with the proposed repair estimate. Babb did not obtain

Jerry or Nancy Dillon's signature on the proposed repair estimate acknowledging receipt of the estimate and approving the estimate as the line entitled "Estimate Received By" is blank. Jerry Dillon spoke with Babb after Babb inspected the vehicle and informed Babb he did not want non-OEM parts utilized to repair his vehicle. Babb told Jerry Dillon his insurance policy stated that appellant was permitted to utilized OEM and non-OEM parts for vehicle repairs. Babb knew he did not obtain Jerry or Nancy Dillon's signature on the proposed repair estimate, but stated he verbally explained to Jerry Dillon that the insurance policy specifically permitted appellant to utilize non-OEM parts.

{¶4} An endorsement to Part IV of the insurance policy appellees had with appellant provides that when repairing damage to the insured's car, the amount covered is the "amount necessary to repair or replace the property or parts with other of like kind and quality." "Property of like kind and quality includes * * * parts from other sources such as rebuilt parts, quality recycled (used) parts and parties supplied by non-original equipment manufacturers."

{¶5} After speaking with Babb, Jerry Dillon instructed Mission Auto to repair his vehicle using only OEM parts. Mission Auto repaired the vehicle. Appellant paid Mission Auto $8,462.25 to repair appellees' vehicle and an additional $1,000 for subsequent repair work related to the accident, but did not pay the balance of the bill for the use of the OEM parts.

{¶6} Appellees filed a complaint on December 27, 2011 against appellant alleging common law causes of action and alleging violations of the Ohio Consumer Sales Practice Act. Appellant filed a motion for judgment on the pleadings which the trial court denied on March 22, 2012. Appellant then filed a motion for summary

judgment on all counts and appellees filed a partial motion for summary judgment, seeking summary judgment on Count IV, violation of R.C. 1345.81 of the Ohio Consumer Sales Practices Act ("CSPA") for failure to obtain appellees' signature on the bottom of its estimate approving the use of non-OEM parts. On March 22, 2012, the trial court denied appellant's motion for summary judgment. The trial court granted partial summary judgment to appellees on April 27, 2012 as to Count IV only and scheduled a damages hearing. On May 1, 2012, appellees filed a notice of voluntary dismissal of Counts I, II, III, V, VI, VII, and VIII.

{¶7} On May 29, 2012, the parties filed a joint stipulation stating that if appellant is found to have violated the CSPA, the parties stipulate the amount of appellees' actual economic damages is $1,521.07. The trial court held a hearing on proof of damages as to Count IV on June 12, 2012. At the hearing, the parties again stipulated to the $1,521.07 amount of actual damages. Erica Eversman, Esq. ("Eversman") testified on behalf of appellees in regards to attorney fees. She testified that the particular section of the CSPA in Count IV is a complicated area of the law that only a few attorneys in the state handle. Further, that she had reviewed the bill submitted by counsel for appellees and the charges were reasonable. Eversman testified that $400 per hour was a reasonable hourly rate for counsel for appellees given the nature of the case. Appellant did not present any evidence or testimony with regards to attorney fees. Counsel for appellant argued the bill submitted by appellees' counsel was excessive because it was more than four times the amount of appellees' possible recovery. Counsel for appellant further contended that counsel for appellees billed excessively for tasks such as research.

{¶8}  The trial court entered a judgment on June 25, 2012, finding appellees were entitled to treble damages of $4,563.21, attorney fees of $20,540.00 and expenses of $3,989.38.  The trial court also stated that the parties stipulated to actual damages of $1,521.07.  However, the trial court failed to include the amount of actual damages in the overall award of $29,092.59.  The trial court specifically found the amount of time spent by counsel for appellees was reasonable based on the nature and complexity of the case and that $400 per hour was a reasonable hourly rate based upon the evidence and testimony submitted by appellees.  After appellees filed a motion for reconsideration, the trial court filed a nunc pro tunc judgment entry on July 17, 2012.  The trial court corrected the total amount of damages to $30,613.66, which included $1,521.07, the amount of actual damages stipulated to by the parties.

{¶9}  Appellant appeals the March 22, 2012, April 27, 2012, June 25, 2012, and July 17, 2012 judgment entries of the Coshocton Municipal Court, assigning the following as error:

{¶10}  "I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND IN GRANTING THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

{¶11}  "II. THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES TO THE PLAINTIFFS, AS WELL AS IN DETERMINING THE AMOUNT OF ATTORNEY FEES.

**{¶12}** "III. THE TRIAL COURT ERRED IN AWARDING PLAINTIFFS TREBLE DAMAGES, AND EVEN IF AN AWARD OF TREBLE DAMAGES WAS WARRANTED, THERE WAS ERROR IN CALCULATING THE AMOUNT OF TREBLE DAMAGES."

I.

*Summary Judgment Standard*

**{¶13}** Civ.R. 56 states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶14}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the

undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶15} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

*Motion for Judgment on the Pleadings Standard*

{¶16} A motion for judgment on the pleadings presents only questions of law. *Luthy v. Dover*, 5th Dist. No. 2011AP030011, 2011-Ohio-4604, citing *Dearth v. Stanley*, 2nd Dist. No. 22180, 2008-Ohio-487. In ruling on a motion for judgment on the pleadings, the trial court must construe the material allegations in the complaint and any reasonable inferences drawn therefrom in favor of the plaintiff. If it finds plaintiff can prove no set of facts entitling plaintiff to relief, the court must sustain a motion for judgment on the pleadings. *Boske v. Massillon City School Dist.*, 5th Dist. No. 2010-CA-00120, 2011-Ohio-580, citing *Hester v. Dwivedi*, 89 Ohio St.3d 575, 2000-Ohio-230, 733 N.E.2d 1161. However, the complaint must allege sufficient facts to support any conclusions, and unsupported conclusions are not presumed to be true. *Id.*

**{¶17}** Judgment on the pleadings may be granted where no material factual issue exists. However, it is axiomatic that a motion for judgment on the pleadings is restricted solely to the allegations contained in those pleadings. *Giesberger v. Alliance Police Dept.*, 5th Dist. No. 2011 CA 00070, 2011-Ohio-5940, citing *Flanagan v. Williams*, 87 Ohio App.3d 768, 623 N.E.2d 185 (4th Dist. 1993).

**{¶18}** Our review of the trial court's decision on a judgment on the pleadings is de novo. See *State v. Sunfronko*, 105 Ohio App.3d 504, 644 N.E.2d 596 (4th Dist. 1995). When reviewing a matter de novo, this Court does not give deference to the trial court's decision. *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 809 N.E.2d 1161, 2004-Ohio-829. "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996).

*Count IV – CSPA Claim*

**{¶19}** Appellant argues the trial court erred in granting appellees' partial motion for summary judgment and denying appellant's motion for judgment on the pleadings and motion for summary judgment because the CSPA does not apply to claims made by an insured under a policy of insurance. Appellant contends that insurance companies are not "suppliers" pursuant to R.C. 1345.02(A) and that consumer transactions do not include transactions between persons defined in R.C. 5725.01, including insurance companies.

{¶20} R.C. 1345.02 provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). The phrase "consumer transaction" expressly excludes transactions between persons defined in R.C. 5725.01, including "insurance companies," defined as "every corporation, association, and society engaged in the business of insurance of any character, or engaged in the business of entering into contracts substantially amounting to insurance of any character." R.C. 5725.01(C). Further, Ohio courts have held that an insured cannot make a CSPA claim against an insurer for a violation under the policy of insurance. *Johnson v. Lincoln Nat'l Ins. Co.*, 69 Ohio App.3d 249, 590 N.E.2d 761 (2nd Dist. 1990); *Bernard v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, N.D. Ohio No. 5:09 CV 1523, 2009 WL 2413922 (August 5, 2009); *Chestnut v. Progressive Cas. Ins. Co.*, 116 Ohio App.3d 299, 2006-Ohio-2080, 850 N.E.2d 751; *Miller v. Geico Indemnity Co.*, 8th Dist. Cuyahoga No. 89603, 2008-Ohio-791.

{¶21} However, in this case, both appellant and appellees agree that the insurance policy, in an endorsement to Part IV, specifically allows for non-OEM parts to be used in repairing damage to the covered vehicle. Thus, despite appellant's argument to the contrary, the issue in this case is not whether non-OEM parts are permitted under the insurance policy. Rather, the case focuses on a violation of a specific section of the CSPA, R.C. 1345.81. R.C. 1345.81(B) provides as follows:

> Any insurer who provides an estimate for repair of a motor
>
> vehicle based in whole or in part upon the use of any non-OEM

aftermarket crash part in the repair of the motor vehicle and any repair facility or installer who intends to use a non-OEM aftermarket crash part in the repair of a motor vehicle shall comply with the following provisions, as applicable:

(1) If the person requesting the repair chooses to receive a written estimate, the insurer, repair facility, or installer providing the estimate shall identify, clearly in the written estimate, each non-OEM aftermarket crash part and shall contain a written notice with the following language in ten-point or larger type: "This estimate has been prepared based upon the use of one or more aftermarket crash parts supplied by a source other than the manufacturer* * *." Receipt and approval of the written estimate shall be acknowledged by the signature of the person requesting the repair at the bottom of the written estimate.

R.C. 1345.81(B)(1). R.C. 1345.81(A) provides that, as used in Section 1345.81, insurer "means any individual serving as an agent or authorized representative of an insurance company, involved with the coverage for repair of the motor vehicle in question." R.C. 1345.81(A)(5). Appellant first argues R.C. 1345.81 only applies to the repair or body shop completing the repairs. However, the statute specifically applies to "the insurer, repair facility, or installer providing the estimate."

{¶22} Appellant also contends that R.C. 1345.81 refers to R.C. 1345.01 and since insurance companies are specifically excluded from the definition of "consumer transaction," and are not "suppliers," insurance companies are not liable under R.C.

1345.81. R.C. 1345.81(E) provides that, "any violation of this section in connection with a consumer transaction as defined in section 1345.01 of the Revised Code is an unfair and deceptive act or practice as defined by section 1345.02 of the Revised Code." Thus, while R.C. 1345.81 specifically defines and includes "insurer" in its provisions, the statute simultaneously makes reference to R.C. 1345.01, which excludes insurance companies from the definition of "consumer transaction."

{¶23} "It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law." *Summerville v. City of Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522 (2010). Pursuant to R.C. 1.51, "[i]f a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is to that the general provision prevail." R.C. 1.51. R.C. 1.52(A) provides, "if statutes enacted at the same time or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails." R.C. 1.52(A).

{¶24} R.C. 1345.01 and R.C. 1345.02 conflict with R.C. 1345.81 with respect to their application to insurers and cannot be applied so as to give effect to all of the provisions. Accordingly, we must resort to statutory interpretation and "construe the statutes so as to give effect to the legislature's intent." *Summerville*, 128 Ohio St.3d at 226. A specific statute will prevail unless the general statute can be shown to be the later adoption of the two and the intent of the General Assembly was to have the general provision control. *Id.* at 228. R.C. 1345.01 and R.C. 1345.02 are part of the

general laws that form the CSPA, while R.C. 1345.81 is a specific provision enacted at a later time as an amendment to the CSPA. R.C. 1345.81 is both the more recent and the more specific statutory provision and thus, any irreconcilable conflict in the wording of the general provisions and R.C. 1345.81 must be resolved in favor of R.C. 1345.81. See *Id.* at 228; see also *Burdge v. Kerasotes Showplace Theatres, LLC*, 12th Dist. No. CA2006-02-023, 2006 WL 2535762 (finding the more specific and later-enacted statute R.C. 1345.18 prevails over the general provisions of R.C. 1345.01 and 1345.09). This statutory interpretation is consistent with the holding by the Ohio Supreme Court that the CSPA "has a remedial purpose and must accordingly be liberally construed in favor of consumers." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 548 N.E.2d 933 (1990).

**{¶25}** We further note that the cases cited by appellant in support of its position that R.C. 1345.81 does not apply to insurers are distinguishable from this case as they do not deal with the specific section of the CSPA at issue in this case, R.C. 1345.81. In addition, the *Johnson* case cited by appellant and cited to by the other courts in dismissing CSPA claims against insurers, is not determinative of the issue in this case because the *Johnson* case was decided on August 31, 1990, prior to the enactment of R.C. 1345.81 on October 16, 1990. *Johnson v. Lincoln Nat'l Ins. Co.*, 69 Ohio App.3d 249, 590 N.E.2d 761 (2nd Dist. 1990).

**{¶26}** In this case, Babb meets the definition of "insurer" in R.C. 1345.81 as he is the individual serving as the agent or authorized representative of the insurance company involved with the coverage for repair of the motor vehicle in question. Babb provided a written estimate for the repair of appellees' vehicle which included non-OEM parts. While the use of non-OEM parts is permissible under the insurance policy,

pursuant to R.C. 1345.81, appellant must have appellees sign the written estimate to acknowledge they received the estimate that included the notification regarding the non-OEM parts. Babb admitted he failed to obtain appellees' signature on the bottom of the repair estimate that included the notice about the non-OEM parts. This is evidenced by the repair estimate, attached as an exhibit to appellees' complaint and motion for summary judgment, in which the line entitled "Estimate Received By" is blank. Accordingly, the trial court did not err in granting appellees' motion for partial summary judgment, denying appellant's motion for summary judgment, and denying appellant's motion for judgment on the pleadings. Appellant's first assignment of error is overruled.

II.

{¶27} Appellant argues that since the CSPA does not apply to claims between an insurer and an insured, any award of attorney fees by the trial court is improper. Further, that the trial court abused its discretion in awarding fees far greater than the damages recovered. We disagree.

{¶28} An award of attorney fees is within the sound discretion of the trial court. *Rand v. Rand*, 18 Ohio St.3d 356, 369, 481 N.E.2d 609 (1985). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶29} As discussed above, R.C. 1345.81, included in the CSPA, applies to any insurer who provides an estimate for the repair of a motor vehicle. R.C. 1345.09(F)(2) provides, in relevant part, that a trial court may award reasonable attorney fees to the prevailing party if "[t]he supplier has knowingly committed an act or practice that violates

this chapter [the Consumer Sales Practices Act]." A supplier does not have to know that his conduct violates the CSPA for the court to grant reasonable attorney fees. *Snider v. Conley's Service*, 5th Dist. No. 1999CA00153, 2000 WL 873780 (June 12, 2000), citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 30, 548 N.E.2d 933 (1990). The supplier must intentionally commit the act, but need not know the act violates Ohio law. *Smith v. Hall*, 5th Dist. Stark No. 2005-CA-00124, 2005-Ohio-5789, citing *Einhorn*, 48 Ohio St.3d at 30. In this case, Babb knew the estimate contained non-OEM parts and stated he knew he did not obtain appellees' signature on the written repair estimate that included non-OEM parts. Accordingly, appellees are entitled to reasonable attorney fees pursuant to R.C. 1345.09(F)(2).

**{¶30}** Appellant next contends the amount of attorney fees awarded by the trial court was not reasonable because the amount of attorney fees is grossly disproportionate to the limited dollar amount of damages in this case. However, this contention was rejected by the Ohio Supreme Court in *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). The Ohio Supreme Court held that rather than forcing a direct relationship between the attorney fees and the amount the consumer recovers, the starting point for the determination of a reasonable amount of fees is the number of hours spent by the attorney multiplied by a reasonably hourly rate. *Id.* "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983).

**{¶31}** The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Canton v. Irwin*,

5th Dist. No. 2011CA00029, 2012-Ohio-344. To establish the number of hours reasonably expended, the party requesting the fees should submit evidence to support the hours worked. *Hensley*, 461 U.S. at 433. A reasonable hourly rate is "the prevailing market rate in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed. 2d 891 (1984). Once the trial court calculates the "lodestar figure," it can modify the calculation by applying the factors listed in Rule 1.5 of the Ohio Rules of Professional Conduct (formerly DR 2-106(B)). *Landmark Disposal Ltd. v. Byler Flea Market*, 5th Dist. Stark No. 2005CA00294, 2006-Ohio-3935. These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. *Canton v. Irwin*, 5th Dist. No. 2011CA00029, 2012-Ohio-344. "All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." *Id.*, citing *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991).

{¶32} In this case, at the evidentiary hearing on attorney fees, appellees submitted Exhibit A, a copy of the fee contract between Jerry Dillon and his attorney, and Exhibit B, a statement of appellees' attorney fees. Eversman testified that the particular section of the CSPA in Count IV is a complicated area of the law that only a few attorneys in the state handle. Further, that she reviewed Exhibit B and the charges

were reasonable. Eversman stated $400 per hour was a reasonable hourly rate for counsel for appellees given the nature of the case and that she charges $350 per hour for similar types of cases. Appellant failed to present any evidence or testimony to refute Eversman's testimony. The trial court found the amount of time spent by counsel was reasonable based on the nature and complexity of the case and that $400 per hour was a reasonable hourly rate based upon the evidence and testimony submitted by appellees. We agree. The evidence and testimony submitted by appellees supported the hours worked and the reasonable hourly rate requested. Appellant did not furnish the trial court with any evidence or testimony to contradict the evidence presented by appellees regarding the number of hours worked or the reasonable hourly rate. Appellant's second assignment of error is overruled.

III.

**{¶33}** Appellant argues the trial court erred in awarding appellees treble damages, or, in the alternative, erred in awarding appellees actual damages in addition to treble damages. We disagree in part and agree in part.

**{¶34}** Appellant contends the trial court erred in awarding treble damages because the practice was not declared to be deceptive or unconscionable by a regulation promulgated by the Attorney General or previously determined by an Ohio court to violated R.C. 1345.02 whose decision was available for public inspection as required by R.C. 1345.09(B). However, pursuant to R.C. 1345.81, the failure to obtain the signature and acknowledgment of the person requesting the repair in a repair estimate that includes non-OEM parts is a deceptive act, as R.C. 1345.81(E) provides that "any violation of this section in connection with a consumer transaction * * * is an

unfair and deceptive act or practice as defined by section 1345.02 of the Revised Code." Because this definite language is included in R.C. 1345.81(E), the statute is analogous to the ten actions or practices contained in R.C. 1345.02 that are specifically found to be unfair or deceptive acts. R.C. 1345.02(B)(1) – (10). See *Mason v. Mercedes-Benz USA, LLC*, 8th Dist. No. 85031, 2005-Ohio-4296.

{¶35} In this case, the statute itself declares that the specific act at issue is an unfair or deceptive practice under R.C. 1345.02. The statute was established prior to the time appellant committed the act. Therefore, because the specific act at issue in this case has previously been declared a deceptive act, the trial court did not err in awarding treble damages in this case.

{¶36} Appellant finally asserts the trial court erred in the amount of damages awarded to appellees because appellees cannot recover actual damages in addition to treble damages. We agree. As stated by the Sixth District in *The Estate of Lamont Cattano v. High Touch Homes, Inc.*, 6th Dist. Erie No. E-01-022, 2002-Ohio-2631, R.C. 1349.09(A) and R.C. 1349.09(B) are mutually exclusive and:

> a consumer can elect between the remedies of rescission or damages and, if the consumer can prove that the supplier should have known that his actions constituted a violation of the Act, the consumer can elect between rescission and damages equal to three times his actual damages up to $200. This holding is supported by the dicta in *Stultz v. Artistic Polls, Inc.* (Oct. 10, 2001), Summit App. No. 20189, at 8, citing *Armstrong v. Kittinger* (Sept. 21, 1994), Summit

App. No. 16124 and 16378, at 26-27, where the court stated that R.C. 1345.09 provides that the consumer, who proves that a supplier has violated the Act and meets the prerequisites for treble damages under R.C. 1345.09(B), can elect either rescission of the contract of treble damages, not actual damages versus treble damages. See, also, *Mid-American Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 597, 579 N.E.2d 721. Therefore, we conclude that the court may not award a party actual damages and treble damages.

*Id.* Accordingly, pursuant to R.C. 1345.09(B), the proper award for damages would be to calculate the actual damages multiplied by three, or $4,563.21, because the parties stipulated to the $1,521.07 amount of actual damages. Accordingly, appellant's third assignment of error is overruled in part and sustained in part.

**{¶37}** Based on the foregoing, we overrule appellant's assignments of errors I and II. We partially overrule and partially sustain appellant's assignment of error III. The March 22, 2012, April 27, 2012, and June 25, 2012 judgment entries of the Coshocton Municipal Court are affirmed. The July 17, 2012 judgment entry of the Coshocton Municipal Court is reversed in part and affirmed in part.

{¶38} Pursuant to App.R. 12(B) we hereby modify the judgment entered by the Coshocton Municipal Court and enter judgment in favor of appellees for treble damages of $4,563.21, attorney fees of $20,540.00 and expenses of $3,989.38, for a total amount of $29,092.59.

By Gwin, P.J.,

Farmer, J., and

Wise, J., concur