[Cite as *Mauger v. Inner Circle Condominium Owners Assn.*, 2011-Ohio-1533.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

LEN MAUGER II, et al.

      Appellants

      v.

INNER CIRCLE CONDOMINIUM
OWNERS ASSOCIATION, et al.

      Appellees

C.A. No.     10CA0046-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    08 CIV 1496

DECISION AND JOURNAL ENTRY

Dated: March 31, 2011

DICKINSON, Presiding Judge.

INTRODUCTION

**{¶1}** Dissatisfied with its management company, the board of directors of the Inner Circle Condominium Owners Association hired M2 Management Corporation to run its day-to-day operations. M2 was owned and operated by Len Mauger, the president of Inner Circle's board. A couple of years into M2's contract, some of Inner Circle's members began to wonder if M2 was paying itself more than was allowed. When Mr. Mauger failed to provide additional information about M2's charges, the other directors allegedly voted him off the board and terminated M2's contract. Mr. Mauger sued to be restored to the board, and Inner Circle counterclaimed, alleging Mr. Mauger violated his fiduciary duties to Inner Circle. Inner Circle also filed a complaint under the same case number against M2 for breach of contract. M2 counterclaimed, alleging Inner Circle did not give it adequate notice before terminating their agreement. The trial court found that Mr. Mauger breached his fiduciary duties to Inner Circle,

that he voluntarily resigned from the board, and that M2 overcharged Inner Circle. It denied Mr. Mauger and M2's claims, and entered judgment in favor of Inner Circle. It also ordered Mr. Mauger to pay Inner Circle's attorney fees. Mr. Mauger and M2 have appealed, arguing that the trial court's judgment is against the manifest weight of the evidence. We affirm because the court's decision is supported by some competent, credible evidence and the court exercised proper discretion when it determined Inner Circle's attorney fee award.

FACTS

{¶2} Inner Circle's members elected Mr. Mauger to Inner Circle's board in 2004, and the other directors appointed him president. Later that year, Inner Circle entered into a five-year management agreement with M2. Under the agreement, Inner Circle agreed to pay M2 $3000 a month and to reimburse M2 for any "materials or supplies" that M2 purchased for its benefit. M2 agreed to handle Inner Circle's day-to-day maintenance and finances and to solicit bids from independent contractors if there were any jobs that it could not handle by itself.

{¶3} At first, Mr. Mauger and his wife performed all of M2's responsibilities. Over time, M2 was hired by other condominium associations to manage their operations, so it hired additional help. According to Mr. Mauger, because of the extra staff, M2 became able to handle some of the jobs for which Inner Circle had previously hired independent contractors. Mr. Mauger testified that he asked Inner Circle's other directors if they would like M2 to take on the additional responsibilities in exchange for a labor fee, and the board agreed because M2 could do the work for less than an independent contractor would charge. According to Denise Bursby, however, who had joined the board at the same time as Mr. Mauger, the board never discussed paying M2 for labor expenses.

**{¶4}** In 2007, Inner Circle levied a special assessment on some of its members because the railings on the upper level of the complex had to be replaced. Angry about the assessment, some of Inner Circle's members pressured the board to scrutinize its expenses more closely. Noticing that M2 was regularly paying itself more than $3000 a month, the board asked Mr. Mauger for a breakdown of M2's additional charges. According to three of Inner Circle's directors, Ms. Bursby, Camille Trivanovich, and Mike Glaser, Mr. Mauger kept putting them off and giving excuses for why he could not get them the information. They eventually sent M2 a certified letter, requesting Inner Circle's complete financial records at the next board meeting.

**{¶5}** When Mr. Mauger arrived at the next meeting without any of Inner Circle's records, the other directors asked him to step down from the board. According to Ms. Bursby, Ms. Trivanovich, and Mr. Glaser, Mr. Mauger resigned from the board and stormed out of the meeting. According to Mr. Mauger, he refused to resign at the meeting, so the other directors attempted to vote him off the board. In either case, a couple days after the meeting, the other Inner Circle directors obtained Inner Circle's records from M2. While going through them, they discovered that M2 had been charging for labor. They also discovered that Mr. Mauger had used Inner Circle's funds to pay for a personal property survey for a condominium he owned at Inner Circle. They later learned from one of Inner Circle's members that Mr. Mauger had purchased a vehicle from him. Mr. Mauger had allegedly told the member that, instead of paying cash for the vehicle, Mr. Mauger would pay the member's special assessment. According to the directors, Mr. Mauger did not pay the assessment for the member, but marked the books to indicate it had been paid.

**{¶6}** The trial court found that Mr. Mauger voluntarily resigned from Inner Circle's board after being asked to do so by the other directors. It, therefore, denied his request to be

reinstated to the board and his claim for damages. The court found that Mr. Mauger engaged in self-dealing by unilaterally deciding to charge Inner Circle for labor, using Inner Circle funds to pay for the property survey, and using his position to procure a vehicle from another member at Inner Circle's expense. It awarded judgment to Inner Circle on its counterclaim against Mr. Mauger for $7743, which was the amount it determined he personally benefited from his actions.

{¶7} Regarding Inner Circle's claims against M2, the court found that M2 improperly charged Inner Circle $4260 for labor expenses that were not authorized under their agreement and entered judgment in favor of Inner Circle for that amount. The court further determined that, because Inner Circle had prevailed on its breach of fiduciary duty claim, Mr. Mauger had to pay some of its attorney fees. Mr. Mauger and M2 have appealed, assigning four errors.

## MANIFEST WEIGHT

{¶8} Mr. Mauger and M2's first assignment of error is that the trial court incorrectly rendered judgment in favor of Inner Circle on its claims against Mr. Mauger. Their second assignment of error is that the trial court incorrectly rendered judgment in favor of Inner Circle on its claims against M2. Their third assignment of error is that the trial court incorrectly denied M2's breach of contract claim against Inner Circle. Their fourth assignment of error is that the court incorrectly ordered Mr. Mauger to pay Inner Circle's attorney fees. Each of their assignments of error is, in essence, an argument that the trial court's decision was against the manifest weight of the evidence. In *State v. Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, at ¶26, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in *Wilson*, the standard applicable in civil cases "was explained in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279." *Id*. at ¶24. The "explanation" in *C.E.*

*Morris* was that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* (quoting *C.E. Morris Co.*, 54 Ohio St. 2d 279, at syllabus); but see *Huntington Nat'l Bank v. Chappell*, 183 Ohio App. 3d 1, 2007-Ohio-4344, at ¶17-75 (Dickinson, J., concurring in judgment only).

INNER CIRCLE'S CLAIMS AGAINST MR. MAUGER AND M2

**{¶9}** Mr. Mauger and M2 have argued that the trial court's conclusion that they are liable for the labor expenses that M2 charged Inner Circle is against the manifest weight of the evidence. According to them, Inner Circle's board approved the additional charges in the spring of 2006 and did not object to any of the bills it received from M2 until March 2008. They have also argued that M2's work actually saved Inner Circle money compared to hiring independent contractors. According to them, Inner Circle failed to present clear and convincing evidence that Mr. Mauger breached his fiduciary duties to Inner Circle.

**{¶10}** Regarding Inner Circle's claims against M2, Ms. Bursby testified that there was only one occasion on which the board agreed to pay M2 for labor, because a painter they had hired did not finish a job. Otherwise, the board never talked about, let alone agreed, to allow M2 to charge for labor. She also testified that, although M2 provided the board with monthly financial statements listing the payments it had made on Inner Circle's behalf, they did not receive any details about the payments that M2 was making to itself. Because M2 was permitted to charge for materials, she assumed that any sums M2 paid itself over $3000 were for materials.

**{¶11}** The trial court found Ms. Bursby's testimony more credible than Mr. Mauger's. We conclude that there was some competent, credible evidence in the record that M2 charged

Inner Circle for labor expenses that were not authorized by their written agreement or that the board otherwise approved. Mr. Mauger's and M2's second assignment of error is overruled.

{¶12} Regarding Inner Circle's claims against Mr. Mauger, under Section 1702.30(B) of the Ohio Revised Code, a director of a not-for-profit organization "shall perform the duties of a director . . . in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances." Under Section 1702.30(D), "a director is liable in damages for any act that the director takes . . . only if it is proved, by clear and convincing evidence, . . . that the act or omission of the director was one undertaken with a deliberate intent to cause injury to the corporation or was one undertaken with a reckless disregard for the best interests of the corporation."

{¶13} Mr. Mauger has argued that, in light of the monthly financial statements he provided at board meetings, the lack of objections from the other directors, and the cost savings to Inner Circle, the trial court incorrectly determined that there was clear and convincing evidence that he deliberately intended to injure Inner Circle or that he had M2 undertake additional work with a reckless disregard for Inner Circle's best interests. Ms. Bursby, however, explained why she and the other directors did not initially question the sums that M2 was paying itself in excess of $3000. She also testified that, when she and the other directors requested a breakdown of M2's charges, Mr. Mauger failed to provide them any additional documentation.

{¶14} Ms. Trivanovich and Mr. Glaser confirmed Ms. Bursby's testimony, explaining that it was Mr. Mauger's repeated failure to provide a breakdown of M2's charges that led them to send him a certified letter regarding the issue. Even after receiving the letter, Mr. Mauger failed to provide additional documentation about M2's charges at the following board meeting.

Ms. Bursby further testified that Mr. Mauger agreed at one point to hire an accountant to audit Inner Circle's financial records, but that the audit was never completed because Mr. Mauger did not provide the accountant with the necessary records.

{¶15} The testimony of Inner Circle's directors, who the trial court found were credible, established that Mr. Mauger caused M2 to charge Inner Circle for expenses that the board had not authorized. Although Mr. Mauger testified that it was more cost-effective for M2 to do the work, he did not present any evidence to corroborate his claim. Rather, it can be inferred from the fact that Mr. Mauger repeatedly refused to provide Inner Circle's complete financial records to the other directors that Mr. Mauger intentionally charged Inner Circle for the unauthorized work. It can also be inferred that Mr. Mauger charged for the unauthorized work, at the very least, in reckless disregard of Inner Circle's best interests.

{¶16} Mr. Mauger has also argued that the trial court incorrectly found him liable for a special assessment that had been levied against another Inner Circle member. He has argued that Inner Circle did not plead a claim involving the other member and did not join the other member as a party. He has also denied that he agreed to pay the other member's assessment. He has further argued that, even if he said he would pay the other member's assessment, the evidence submitted at trial established that it had been paid.

{¶17} The language of Inner Circle's complaint was broad enough to encompass a claim for the unpaid assessment, and that the other Inner Circle member was not an indispensable party. See Civ. R. 8(A); Civ. R. 19(B). Mr. Mauger's own testimony undermines his claim that he did not promise to pay the other member's special assessment. When asked about the vehicle sale, Mr. Mauger answered: "I believe part was in cash, the other part would be paid toward the special railing assessment." While Mr. Mauger testified that he paid the other member's

assessment and has noted that there is a credit in the other member's account for the payment, Ms. Bursby testified that she was unable to find any evidence that the assessment had actually been paid. She testified that she asked Mr. Mauger for verification of the payment, but Mr. Mauger could not produce any documentation. When asked about the payment on cross-examination, Mr. Mauger testified that he did not have a cancelled check for the payment. Considering that it was M2 that managed the members' accounts, it was reasonable for the trial court to infer that Mr. Mauger had credited the member's account and the special assessment had not been paid.

{¶18} Mr. Mauger has further argued that the trial court incorrectly found that he breached his fiduciary duties to Inner Circle when he used Inner Circle's funds for a survey of one of his condominiums. According to Mr. Mauger, he mistakenly paid the bill from Inner Circle's account and offered to reimburse Inner Circle immediately after learning about the mistake. He has also argued that he brought a check to trial for the $2500.

{¶19} Ms. Bursby denied that Mr. Mauger had attempted to repay the $2500 and testified that Mr. Mauger did not even suggest that until he was on the stand. We have reviewed Mr. Mauger's testimony and note that, although he claimed to have a check with him at trial, there is no indication in the record that he ever tendered it to Inner Circle. We conclude there was competent, credible evidence in the record from which the trial court could determine that Mr. Mauger deliberately used Inner Circle's assets to pay his personal expenses. M2 and Mr. Mauger's first assignment of error is overruled.

M2'S CLAIM AGAINST INNER CIRCLE

{¶20} Regarding M2's breach of contract claim, Mr. Mauger and M2 have argued that the trial court's finding that Inner Circle did not breach their agreement by failing to give 60-

days notice before terminating it is against the manifest weight of the evidence. The trial court found there was no breach because Mr. Mauger unilaterally terminated the agreement on behalf of M2 at the board meeting in which he resigned.

{¶21} Ms. Trivanovich testified that, at Inner Circle's March 18, 2008, board meeting, Mr. Mauger "resigned himself and resigned his company" from involvement with Inner Circle. When the trial court asked if Mr. Mauger meant that he was "not going to do this and I'm taking my company with me," Ms. Trivanovich agreed. Her testimony is consistent with a letter that M2 issued the following day explaining that Mr. Mauger told the board that "he would like to terminate [M2's] agreement and the Board has accepted such termination[.]" We, therefore, conclude that there was some competent, credible evidence to support the trial court's determination that the 60-day notice provision was immaterial because M2 was the party that terminated the agreement. Mr. Mauger and M2's third assignment of error is overruled.

ATTORNEY FEES

{¶22} Mr. Mauger and M2's fourth assignment of error is that the trial court incorrectly ordered Mr. Mauger to pay Inner Circle's attorney fees. They have argued that the payment of attorney fees was not authorized by statute and that Inner Circle failed to prove actual malice or fraud.

{¶23} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St. 3d 546, 2009-Ohio-306, at ¶7. "However, there are exceptions to this rule. Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees . . . or when the prevailing party demonstrates bad faith on the part of the

unsuccessful litigant[.]" *Id.* They may also be awarded as an element of compensatory damages if punitive damages are awarded. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 558 (1994).

{¶24} Inner Circle has argued that the trial court correctly ordered Mr. Mauger to pay its attorney fees because he acted in bad faith. See *Wilborn v. Bank One Corp.*, 121 Ohio St. 3d 546, 2009-Ohio-306, at ¶7 (providing that "[a]ttorney fees may be awarded . . . when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant[.]"). The Ohio Supreme Court has described bad faith as "a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. . . . It means with actual intent to mislead or deceive another." *State ex rel. Bardwell v. Cuyahoga County Bd. of Comm'rs*, 127 Ohio St. 3d 202, 2010-Ohio-5073, at ¶8 (quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, paragraph two of the syllabus (1962), overruled on other grounds by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552 (1994)).

{¶25} The trial court found that Mr. Mauger charged Inner Circle unauthorized labor fees, used Inner Circle's funds to pay for a personal land survey, and procured a personal vehicle at Inner Circle's expense. It determined that Mr. Mauger's self-dealing violated Inner Circle's by-laws and his duty not to act in bad faith. See R.C. 1702.30(B) (requiring directors of not-for-profit organizations to act in good faith). We have reviewed the record and conclude that the trial court's finding that Mr. Mauger acted in bad faith is supported by some competent, credible evidence.

**{¶26}** Mr. Mauger and M2 have also argued that the trial court's attorney fee award was unreasonable because it exceeded the amount of Inner Circle's damages. This Court has held that a "trial court maintains discretion to make the determination as to what [attorney] fee award is reasonable in light of all the facts and circumstances of the case." *Jerels v. Begue*, 9th Dist. No. 24700, 2010-Ohio-1964, at ¶13.

**{¶27}** Inner Circle submitted evidence that its lawyer spent 162 hours on this matter and that he charged $100 per hour. Inner Circle presented testimony from another Medina County lawyer, who testified that the amount of time Inner Circle's lawyer spent on the case was reasonable and that $100 was below the county's average hourly rate. The trial court only awarded Inner Circle attorney fees for 81.4 hours because it determined that Inner Circle was only entitled to fees for the work the lawyer had done on its breach of fiduciary duty claim.

**{¶28}** We conclude that the trial court's attorney fee award was reasonable in light of the evidence presented. Mr. Mauger and M2's fourth assignment of error is overruled.

## CONCLUSION

**{¶29}** The trial court's judgment was not against the manifest weight of the evidence, and it exercised proper discretion when it determined the amount of Inner Circle's attorney fee award. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, J.
BELFANCE, J.
CONCUR

APPEARANCES:

STEVEN M. OTT, Attorney at Law, for Appellants.

LEE T. SKIDMORE, Attorney at Law for for Appellees.

ROBERT J. KOETH, Attorney at Law, for Appellee.