[Cite as *Bigelow v. Am. Fam. Ins.*, 2014-Ohio-2945.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| DEBORAH BIGELOW | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2013CA0024 |
| AMERICAN FAMILY INSURANCE | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:            Civil appeal from the Coshocton County
                                                              Municipal Court, Case No. CVE 1200287

JUDGMENT:                                        Affirmed in part; reversed in part

DATE OF JUDGMENT ENTRY:            June 30, 2014

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

JAMES SKELTON                              MARK MADDOX
309 Main Street                                 987 South High Street
Coshocton, OH 43812                        Columbus, OH 43206-2527

*Gwin, P.J.*

{¶1} Appellant appeals the following judgment entries of the Coshocton Municipal Court: the November 19, 2012 judgment entry granting appellee's partial motion for summary judgment, the January 29, 2013 judgment entry awarding appellee damages including treble damages and attorney fees; and the February 20, 2013 awarding appellee additional damages for attorney fees and expert witness fees.

*Facts & Procedural History*

{¶2} In May of 2012, appellee Deborah Bigelow was in an auto accident in her 2007 Chevrolet Malibu. At the time of the accident, appellee was covered by an insurance policy of appellant American Family Insurance. Appellee contacted Coshocton Collision Center to repair the damage and requested the use of only original equipment manufacturer ("OEM") parts to repair the vehicle. Appellant subsequently paid a portion of the repair bill to Coshocton Collision, but a balance of $161.19 remains for the difference between the price of used or recycled parts authorized by appellant and OEM parts actually utilized in the repair.

{¶3} Gary Board ("Board") was the field physical damage inspector and adjuster assigned to appellee's case. Board evaluates damages, writes estimates, and issue payments for appellant. After Board inspected appellee's 2007 Chevrolet Malibu, he created a repair estimate for the vehicle which included OEM and non-OEM parts. The repair estimate included a paragraph regarding aftermarket parts and provides as follows:

This estimate has been prepared based on the use of one or

more aftermarket crash parts supplied by a source other

than the manufacturer of your motor vehicle. Warranties applicable to these aftermarket crash parts are provided by the parts manufacturer or distributor rather than by your own motor vehicle manufacturer.

{¶4} Board did not obtain appellee's signature on the repair estimate acknowledging receipt of the estimate or approving the estimate as the line entitled "Signature" is blank. Board stated when he issued the repair estimate, he knew it called for the use of aftermarket or non-OEM parts and he knew he did not have appellee's signature on the estimate. Board attempted to contact appellee to discuss the use of the aftermarket parts, used parts, and OEM parts, but she did not return his call.

{¶5} The insurance policy appellee had with appellant provides as follows:

The amount necessary to repair or replace the property is determined by one of the following: * * *

c. an estimate based upon prevailing prices and the prices charged by a statistically significant number of repair facilities in the area where your insured car it to be repaired, as determined by us. Upon your request, we will identify facilities that will perform the repairs for the prevailing competitive price.

{¶6} The policy further states that "if a repair or replacement results in a betterment of the part, we will not pay for the amount of the betterment."

{¶7} Appellee filed a complaint on June 11, 2012 against appellant alleging common law causes of action and alleging violations of the Ohio Consumer Sales

Practice Act.  Appellee filed a partial motion for summary judgment on October 1, 2012, seeking summary judgment on Count IV, violation of R.C. 1345.81 of the Ohio Consumers Sales Practices Act ("CSPA") for failure to obtain appellee's signature on the bottom of its estimate approving the use of non-OEM parts.  Attached to appellee's motion for summary judgment was an affidavit of appellee, stating that after she contacted appellant to repair her vehicle, appellant's adjuster issued a written repair estimate requiring the use of non-OEM parts and that the adjuster issued her the written estimate without giving her the opportunity or choice to receive a written estimate, verbal estimate, or no estimate at all.  Appellee stated appellant did not obtain her signature on the estimate to repair her vehicle approving the use of non-OEM parts and acknowledging receipt of the estimate as required by R.C. 1345.81.

{¶8}  After appellant failed to respond to requests for admissions, the admissions that were deemed admitted pursuant to Civil Rule 36 provided that appellant prepared a written estimate for the repair of appellee's vehicle without giving appellee an opportunity to request the type of estimate and that the estimate called for the use of non-OEM parts, appellant did not get the signature of appellee, the person requesting the repair, on said estimate and appellant knew they did not obtain the signature on said estimate.  The trial court granted partial summary judgment to appellee on November 19, 2012 as to Count IV only and scheduled a damages hearing.  Appellee initially dismissed Counts I, II, III, V, VI, and VII without prejudice on December 4, 2012, but subsequently dismissed Counts I, II, III, V, VI, and VII of her complaint with prejudice.

{¶9}  The trial court held a damages hearing on December 11, 2012.  At the hearing, appellee testified the balance owed for the use of the OEM parts was $161.19.

Appellee also testified that Exhibit A was the bill for her attorney's services in the case, stated she reviewed the bill, and requested the trial court order appellant to pay the bill for her attorney fees associated with the instant case. David Grudier, Rick Little, and Herb Graham testified as to the difference between OEM and non-OEM parts. Erica Eversman, Esq. ("Eversman") testified on behalf of appellee in regards to attorney fees. The trial court found her to be an expert without objection from appellant. Eversman is an attorney whose primary area of practice is collision repair-related issues along with insurance and consumer protection. Eversman testified that the particular section of the CSPA in Count IV is a complicated area of law that only a few attorneys in the state handle. Though she agreed it would take less time to handle one of these cases since counsel for appellee had previously handled similar cases, Eversman testified these lesser amounts are already reflected in the bill submitted as Exhibit A. Further, that she had reviewed the bill submitted by counsel for appellee and the charges were reasonable. Eversman testified that $400 per hour was a reasonable hourly rate for counsel for appellee.

{¶10} James Skelton, Esq. ("Skelton"), attorney for appellee, testified that he created the bill marked as Exhibit A. Skelton stated most R.C. 1345.81 cases are not carbon copies of each other and, in this case, he had to spend higher amounts of time to set up depositions and conduct discovery because appellant's original attorney would not respond to his requests.

{¶11} Cari Evans, Esq. ("Evans") testified on behalf of appellant. Evans' primary practice consists of approximately 90% insurance defense work. Evans testified that $400 is in excess of what is a reasonable or standard hourly fee in the area. Further,

that the issues in the case are not complex, the research hours were inflated, and previous pleadings were re-used in this case. On cross-examination, Evans stated she had no experience with this particular statute and had not researched the statute. Evans was not qualified as an expert.

{¶12} At the conclusion of the hearing, the trial court instructed the parties to file post-hearing briefs with any closing arguments and instructed appellant to specifically indicate which portions of Exhibit A, Skelton's bill, they objected to based upon the testimony at the hearing. In his post-hearing brief, Skelton included an updated billing statement that added billing for December of 2012, including the damages hearing. Skelton also submitted a request for expert witness fees for Eversman, Rick Little, and Herb Graham's appearance and testimony at the December 2012 damages hearing. On January 29, 2013, the trial court issued a judgment entry awarding appellee actual damages of $161.19, treble damages of $483.57, and expenses of $326.44. The trial court further stated it found the amount of $5,700 billed for research to be too high and reduced the amount allowed for research to $1,200. The trial court stated that the billings of May 24, 2012, August 22, 2012, September 21, 2012, and September 27, 2012 are high as these are standard motions filed in these types of cases and Skelton's expertise should enable him to shorten the period of time necessary to perform the functions. The trial court reduced these entries to a total of 2 hours or $800. At the December 2012 hearing, appellee requested $18,966.44 in attorney fees and the trial court found the reasonable amount of attorney fees to be $12,140. In its entry, the trial court also noted that Skelton submitted a bill for expert witness fees as well as additional bill for legal services rendered in December of 2012, primarily related to the

December 11, 2012 damages hearing. The trial court found appellant should have the ability to challenge and dispute these additional fees prior to the granting of a final judgment.

{¶13} A hearing was held on Skelton's request for expert witness fees and additional attorney fees on February 8, 2013. Skelton testified that he bills in a monthly cycle and the additional fees requested were incurred in December of 2012 and were primarily charges he could not have presented at the first hearing because they were fees for the attendance at the hearing, review of appellant's post-hearing brief, and research and writing of appellee's post-hearing brief. Skelton requested an additional $5,500 in attorney fees. Skelton also requested expert witness fees of $4,865.90 for the testimony of Eversman, Graham, and Little at the December 11, 2012 hearing.

{¶14} On February 20, 2013, the trial court issued a final judgment entry. The trial court stated the February 8th hearing was necessary because Skelton submitted additional bills for his time and expenses as the result of the hearing held in December of 2012. The trial court stated it applied R.C. 1345 and *Bittner v. Tri-County Toyota,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), to this case and found the time spent in litigation as well as the hourly rate was reasonable. Accordingly, the trial court awarded appellee: actual damages of $161.19, treble damages of $483.57, expenses of $326.44, expert witness fees of $4,272.15, and total attorney fees of $17,640 ($12,140 as detailed in the January 2013 judgment entry and the additional $5,550 requested by Skelton for December 2012 fees).

{¶15} Appellant appeals the November 19, 2012, January 29, 2013, and February 20, 2013 judgment entries of the Coshocton Municipal Court, assigning the following as error:

{¶16} "I. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

{¶17} "II. THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES TO THE PLAINTIFFS, AS WELL AS IN DETERMINING THE AMOUNT OF ATTORNEY FEES.

{¶18} "III. THE TRIAL COURT ERRED IN AWARDING APPELLEE ACTUAL AND TREBLE DAMAGES."

I.

*Summary Judgment Standard*

{¶19} Civ.R. 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can

come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶20} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶21} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶22} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the

record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

*Count IV – CSPA Claim*

**{¶23}** Appellant argues the trial court erred in granting appellee's partial motion for summary judgment because the CSPA does not apply to claims made by an insured under a policy of insurance. Appellant contends that insurance companies are not "suppliers" pursuant to R.C. 1345.02(A) and that consumer transactions do not include transactions between persons defined in R.C. 5725.01, including insurance companies.

**{¶24}** In *Dillon v. Farmers Ins. of Columbus, Inc.*, 5th Dist. Coshocton No. 2013CA0014, 2014-Ohio-431, this Court found that, due to the well-settled rules of statutory construction, the specific code section R.C. 1345.81 prevails over the general code sections of R.C. 1345.01 and R.C. 1345.02. Further, as noted in *Dillon*, the cases cited by appellant in support of its position that R.C. 1345.81 does not apply to insurers are distinguishable from this case as they do not deal with the specific section of the CSPA at issue in this case, R.C. 1345.81. In addition, the *Johnson* case was decided on August 31, 1990, prior to the enactment of R.C. 1345.81 on October 16, 1990. *Johnson v. Lincoln Nat'l Ins. Co.*, 69 Ohio App.3d 249, 590 N.E.2d 761 (2nd Dist. 1990).

{¶25} In this case, Board meets the definition of "insurer" in R.C. 1345.81 as he is the individual serving as the agent or authorized representative of the insurance company involved with the coverage for repair of the motor vehicle in question. Board provided a written estimate for the repair of appellee's vehicle which included non-OEM parts. While the use of non-OEM parts is permissible under the insurance policy, pursuant to R.C. 1345.81, appellant must have appellee sign the written estimate to acknowledge she received the estimate that included the notification regarding the non-OEM parts. Board admitted he failed to obtain appellee's signature on the bottom of the repair estimate that included the notice about the non-OEM parts. This is evidenced by the repair estimate, attached as an exhibit to appellee's motion for summary judgment, in which the line entitled "Signature" is blank, the deemed admission that appellant did not get the signature of appellee, the person requesting the repair, on said estimate, the deemed admission that appellant knew they did not obtain the signature on said estimate, and appellee's affidavit that appellant did not obtain her signature on the estimate to repair her vehicle approving the use of non-OEM parts and acknowledging receipt of the estimate as required by R.C. 1345.81. Based upon the reasoning in *Dillon*, we find that appellant's arguments that the CSPA does not apply to claims made by an insured under a policy of insurance, that insurance companies are not "suppliers" pursuant to R.C. 1345.02(A), and that consumer transactions do not include transactions between persons defined in R.C. 5725.01, fail.

{¶26} Appellant additionally argues there is no evidence that appellee requested or otherwise chose to receive a written estimate and thus R.C. 1345.81 does not apply. We disagree. Board testified it is standard procedure to provide a written repair

estimate whether the vehicle owner requests it or not.  Appellee's affidavit provides that appellant issued her the written estimate without giving her the opportunity or choice to receive a written estimate, verbal estimate, or no estimate at all.   The deemed admissions provide that appellant prepared a written estimate for the repair of appellee's vehicle without giving appellee an opportunity to request the type of estimate and that the estimate called for the use of non-OEM parts.  Appellant cannot avoid the penalty of failing to comply with R.C. 1345.81 by simply issuing a written estimate before appellee had the opportunity to request it.   Further, in this case, appellee requested appellant pay for the repairs to her vehicle which, according to Board's testimony, is synonymous to requesting the issuance of the estimate.  R.C. 1345.81 provides that, "receipt and approval of the written estimate shall be acknowledged by the signature of the person requesting the repair at the bottom of the written estimate." Here, appellee requested the repair and her signature was not obtained at the bottom of the written estimate.

{¶27}  Appellant's first assignment of error is overruled.

II.

{¶28}  Appellant argues that since the CSPA does not apply to claims between an insurer and an insured, any award of attorney fees by the trial court is improper. Further, that the trial court abused its discretion in awarding the amount of attorney fees and expert witness fees.

*Attorney Fees*

{¶29}  An award of attorney fees is within the sound discretion of the trial court. *Rand v. Rand*, 18 Ohio St.3d 356, 369, 481 N.E.2d 609 (1985).  In order to find an

abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶30} As discussed above and in *Dillon*, R.C. 1345.81, included in the CSPA, applies to any insurer who provides an estimate for the repair of a motor vehicle. R.C. 1345.09(F)(2) provides, in relevant part, that a trial court may award reasonable attorney fees to the prevailing party if "[t]he supplier has knowingly committed an act or practice that violates this chapter [the Consumer Sales Practices Act]." A supplier does not have to know this is conduct violates the CSPA for the court to grant reasonable attorney fees. *Snider v. Conley's Service*, 5th Dist. No. 1999CA00153, 2000 WL 873780 (June 12, 2000) citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 30, 548 N.E.2d 933 (1990). The supplier must intentionally commit the act, but need not know the act violates Ohio law. *Smith v. Hall*, 5th Dist. Stark No. 2005-CA-00124, 2005-Ohio-5789, citing *Einhorn*, 48 Ohio St.3d at 30. In this case, Board knew the estimate contained non-OEM parts and testified he knew he did not obtain appellee's signature on the written repair estimate that included the non-OEM parts. Further, the deemed admissions establish that appellant knew they did not obtain the signature on said estimate. Accordingly, appellee is entitled to reasonable attorney fees pursuant to R.C. 1345.09(F)(2).

{¶31} Appellant next contends the amount of attorney fees awarded by the trial court was not reasonable because the amount of attorney fees is grossly disproportionate to the limited dollar amount of damages in this case. However, as we discussed in *Dillon*, this contention was rejected by the Ohio Supreme Court in *Bittner v.*

*Tri-County Toyota*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). The Ohio Supreme Court held that rather than forcing a direct relationship between the attorney fees and the amount the consumer recovers, the starting point for the determination of a reasonable amount of fees is the number of hours spent by the attorney multiplied by a reasonable hourly rate. *Id.* "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983).

**{¶32}** The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Canton v. Irwin*, 5th Dist. No. 2011CA00029, 2012-Ohio-344. To establish the number of hours reasonably expended, the party requesting the fees should submit evidence to support the hours worked. *Hensley*, 461 U.S. at 433. A reasonable hourly rate is "the prevailing market rate in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed. 2d 891 (1984). Once the trial court calculates the "lodestar figure," it can modify the calculation by applying the factors listed in Rule 1.5 of the Ohio Rules of Professional Conduct (formerly DR 2-106(B)). *Landmark Disposal Ltd. v. Byler Flea Market*, 5th Dist. Stark No. 2005CA00294, 2006-Ohio-3935. These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. *Canton v. Irwin*, 5th Dist. No.

2011CA00029, 2012-Ohio-344. "All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." *Id.*, citing *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). The "trial court maintains discretion to make the determination as to what [attorney] fee award is reasonable in light of all the facts and circumstances of the case." *Mauger v. Inner Circle Condominium Owners Assn.*, 9th Dist. No. 10CA0046-M, 2011-Ohio-1533.

{¶33} While appellant contends Exhibit A, Skelton's detailed billing statement, was not properly admitted as an exhibit, we disagree. Unlike in the cases cited by appellant, *Fay Gardens Mobile Home Park v. Newman*, 14 Ohio App.3d 144, 470 N.E.2d 164 (12th Dist. 1983) and *Frey v. Trenor Motor Co.*, 2nd Dist. Clark No. 94-CA-69, 1995 WL 502254 (Aug. 25, 1995), appellee testified she reviewed Exhibit A, her legal bill, and sought to have it paid. Further, Eversman testified she reviewed the bill and all the motions and pleadings and found the work necessary for the resolution of the case and the statement accurately reflected the worked performed. Thus, Eversman actually reviewed the work itself and not simply the bill like the expert in *Frey*. Finally, Skelton testified to and detailed the information in the bill and the work performed in the initial and revised bill at the first and second hearings. Counsel for appellant had the opportunity to cross-examine Skelton at both hearings as to the number of hours expended and the need for the amount of time alleged to have been devoted to the case. Further, Skelton had personal and first-hand knowledge that the billing statement accurately reflected the work reasonably performed by him. The testimony presented establishes Exhibit A was a billing statement that accurately

reflected the work reasonably performed by Skelton. Accordingly, the trial court did not err in admitting Exhibit A.

{¶34} Having reviewed the record in this case, we find the court did not abuse its discretion in determining the attorney fees award. Appellee submitted evidence to support the hours worked and a reasonable hourly rate. Eversman, an attorney whose primary area of practice is collision repair-related issues and insurance and consumer protection, testified that the particular section of the CSPA in Count IV is complicated area of law that only a few attorneys in the state handle. Further, that she reviewed Exhibit A and all the pleadings and motions in the case and that the charges in Exhibit A were reasonable. Eversman stated $400 per hour was a reasonable hourly rate for Skelton given the nature of the case and that she charges $350 per hour for similar types of cases. Though she agreed it would take less time to handle one of these cases since Skelton previously handled similar cases, Eversman testified these lesser amounts were already reflected in Exhibit A. Skelton stated that since most R.C. 1345.81 cases are not carbon copies of each other and, in this case, he had to spend higher amounts of time to set up depositions and conduct discovery because appellant's original attorney was slow to respond to his requests. Though Evans testified that $400 was in excess of what a reasonable or standard hourly rate in the area, Evans stated she had no experience with this particular statute and had not researched this particular statute. The trial judge who presided over all of the proceedings below was in the best position to review and assess the value of the attorney's services. *Bittner v. Tri-County Toyota,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). The underlying rationale for this deference to the trial court is that "the trial judge is best able to view the witnesses and

observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶35} In the January 2013 entry, the trial court agreed with appellant that Skelton's research hours were inflated and reduced the amount for research from $5,700 (14.25 hours) to $1,200 (3 hours). The trial court also agreed with appellant that certain billings were too high given that the motions filed were standard motions in the case and Skelton should be able to complete them in a shorter period of time due to his expertise. Accordingly, the trial court properly calculated the lodestar figure and properly utilized the factors as listed above to award appellee a reduced amount of $12,140 in attorney fees when the initial request was for $18,966.44. At the February 2013 hearing on attorney fees, Skelton testified that he incurred additional fees as a result of attending the first hearing, reviewing appellant's post-hearing brief, and researching and writing appellee's post-hearing brief. In its February 20, 2013 entry, the trial court stated it applied R.C. 1345 and *Bittner v. Tri-County Toyota,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), to this case and found the time spent in litigation and the hourly rate was reasonable. Accordingly, the trial court utilized the proper procedure to determine the additional $5,500 in attorney fees were reasonable. Appellant's second assignment of error is overruled as it pertains to attorney fees.

*Expert Witness Fees*

{¶36} Appellant argues a trial court may not award expert witness fees as attorney fees and the trial court erred by considering the unauthenticated expert witness bills. We find the second portion of appellant's argument to be dispositive.

{¶37} A condition precedent to the admissibility of documents is that documents must be authenticated or identified. *St. Paul Fire & Marine Ins. Co. v. Ohio Fast Freight, Inc.*, 8 Ohio App.3d 155, 157, 456 N.E.2d 551 (10th Dist. 1982). "Generally, authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.;* Evid.R. 901(A). "The common manner of identifying a document is through testimony of a witness with knowledge." *Id.*

{¶38} In this case, unlike Skelton, appellee, and Eversman's testimony about Skelton's legal bill (Exhibit A), no witnesses were able to identify or authenticate the documents purporting to be the bills of the expert witnesses that were attached to appellant's post-hearing brief. When Skelton testified at the hearing, he could not verify that the time the experts spent on this case was the actual amount of time they spent completing the tasks as listed in their bills. Skelton could not testify to what time Little included on his non-itemized bill and could not testify to how long Eversman actually spent reviewing documents and completing other tasks listed on her bill. Therefore, upon review of the record, we find the documents were not properly introduced, indentified, or authenticated by any person with knowledge that the billing statements accurately reflected the work performed.

{¶39} Accordingly, we find the trial court abused its discretion in considering the billing statements of the experts as evidence of the amount of fees incurred. Appellee presented no other evidence of the expert fees and thus, upon review of the record, we find there was insufficient evidence to support the award of expert fees and the trial court abused its discretion when it awarded expert fees in the amount of $4,272.15.

The portion of appellant's assignment of error II regarding expert witness fees is sustained.

III.

**{¶42}** Appellant argues the trial court erred in awarding appellee actual damage and treble damages, or, in the alternative, erred in awarding appellee actual damages in addition to treble damages. We disagree in part and agree in part.

**{¶43}** We first find the trial court properly calculated the amount of actual damages at $161.19, as the difference between the used parts paid for by appellant and the new parts used was $161.19.

**{¶44}** Appellant also contends the trial court erred in awarding treble damages because the practice was not declared to be deceptive or unconscionable by a regulation promulgated by the Attorney General or previously determined by an Ohio court to have violated R.C. 1345.02 and whose decision was available for public inspection as required by R.C. 1345.09(B). However, pursuant to R.C. 1345.81, the failure to obtain the signature and acknowledgment of the person requesting the repair in a repair estimate that includes non-OEM parts is a deceptive act, as R.C. 1345.81(E) provides that "any violation of this section in connection with a consumer transaction * * * is an unfair and deceptive act or practice as defined by section 1345.02 of the Revised Code." Because this definite language is included in R.C. 1345.81(E), the statute is analogous to the ten actions or practices contained in R.C. 1345.02 that are specifically found to be unfair or deceptive acts. R.C. 1345.02(B)(1)-(10). *See Mason v. Mercedes– Benz USA, LLC,* 8th Dist. No. 85031, 2005–Ohio–4296.

{¶45} As we held in *Dillon*, the statute itself declares that the specific act at issue is an unfair or deceptive practice under R.C. 1345.02. 5th Dist. Coshocton No. 2013CA0014, 2014-Ohio-431. The statute was established prior to the time appellant committed the act. Therefore, because the specific act at issue in this case has previously been declared a deceptive act, the trial court did not err in awarding treble damages in this case.

{¶46} Appellant finally asserts the trial court erred in the amount of damages awarded to appellee because appellee cannot recover actual damages in addition to treble damages. We agree. As stated by the Sixth District in *The Estate of Lamont Cattano v. High Touch Homes, Inc.,* 6th Dist. Erie No. E–01–022, 2002–Ohio–2631, R.C. 1349.09(A) and R.C. 1349.09(B) are mutually exclusive and:

> a consumer can elect between the remedies of rescission or damages and, if the consumer can prove that the supplier should have known that his actions constituted a violation of the Act, the consumer can elect between rescission and damages equal to three times his actual damages up to $200. This holding is supported by the dicta in *Stultz v. Artistic Polls, Inc.* (Oct. 10, 2001), Summit App. No. 20189, at 8, citing *Armstrong v. Kittinger* (Sept. 21, 1994), Summit App. No. 16124 and 16378, at 26–27, where the court stated that R.C. 1345.09 provides that the consumer, who proves that a supplier has violated the Act and meets the prerequisites for treble damages under R.C. 1345.09(B), can

elect either rescission of the contract of treble damages, not actual damages versus treble damages. See, also, *Mid–American Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 597, 579 N.E.2d 721. Therefore, we conclude that the court may not award a party actual damages and treble damages.

{¶47} *Id.* Accordingly, pursuant to R.C. 1345.09(B), the proper award for damages would be to calculate the actual damages multiplied by three, or $483.57. Accordingly, appellant's third assignment of error is overruled in part and sustained in part.

{¶48} Based on the foregoing, we overrule appellant's assignment of error I. We partially overrule and partially sustain appellant's assignments of error II and III. The November 19, 2012 judgment entry of the Coshocton Municipal Court is affirmed. The January 29, 2013 and February 20, 2013 judgment entries of the Coshocton Municipal Court are reversed in part and affirmed in part.

{¶49}  Pursuant to App.R. 12(B), we hereby modify the judgment entered by the Coshocton Municipal Court and enter judgment in favor of appellee for treble damages of $483.57, expenses of $326.44, and attorney fees of $17,640.00 for a total amount of $18,450.01.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur